**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 18-40390

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2019

Lyle W. Cayce
Clerk

GAETAN PELLETIER,

Plaintiff – Appellant,

v.

VICTORIA AIR CONDITIONING, LIMITED; LLOYD BOEDEKER;
WARREN HEILKER,

Defendants – Appellees.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GAETAN PELLETIER,

Plaintiff – Appellant,

v.

MARIO LEDESMA, LLOYD BOEDEKER, VICTORIA AIR CONDITIONING,
LIMITED, GAY HEILKER, ANITA HEILKER, WARREN HEILKER,
BENJAMIN F. HEILKER, DONALD H. ANDERSON,

Defendants – Appellees.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 6:17-CV-6

No. 18-40390

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Gaetan Pelletier appeals the district court's dismissal of a contract dispute case for lack of standing. Because the district court did not clearly err in its determination that Pelletier did not establish by a preponderance of the evidence that he personally owned the hotel involved in the underlying contract dispute, we AFFIRM.

I.

Pelletier, proceeding *pro se*, alleges that he is the owner of a hotel that was being constructed in Texas. He raises breach of contract and other state law claims for allegedly faulty plumbing installed in that hotel by the appellees. This case is in federal court under diversity jurisdiction. *See* 28 U.S.C. § 1332.

In the district court, the appellees moved to dismiss, contending that Pelletier was not the owner of the hotel and therefore lacked standing to bring the lawsuit. Instead, the appellees argued that LLCs associated with Pelletier were the legal owners of both the hotel's business and its physical structure. The district court requested supplemental briefing from both parties on the question of standing and held an evidentiary hearing on the matter. The district court then weighed conflicting evidence and made the factual determination that even though Pelletier was the "primary actor" for each of the LLCs, he was not personally the owner of either the structure or the business of the hotel.

---

* Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 18-40390

On one hand, the district court considered evidence indicating that the LLCs owned the hotel, which included: (1) a general warranty deed, a county appraisal, and three deeds of trust to secure loans all identifying an LLC as the owner of the land and/or its improvements; (2) representations made by the LLCs in previous state court proceedings that they were the owners; (3) Pelletier's hearing testimony, where he conflated actions that he personally took with those that were in fact taken by the LLCs; and (4) the absence of other documentary evidence that could have established ownership, such as building permits, subcontracts, insurance policies, or invoices.

On the other hand, the district court also considered a land lease agreement between an LLC affiliated with Pelletier as the lessor and Pelletier as the lessee, which said that the "Lessee owns the improvement structure(s)." However, the district court concluded that the lease, when "taken together with all the other evidence, does not show clear intent by [the LLC] to convey real property or any improvements."

The district court ultimately granted the appellees' motion to dismiss under Rule 12(b)(1), stating:

> The Court cannot conclude Plaintiff has proven beyond a preponderance of the evidence that [he] is the owner of [the hotel]. . . . [T]here are too many instances in the public record where the limited liability companies are declared by Plaintiff to be the owners. Statements to lenders and to courts are not to be taken lightly. Documents that might reflect ownership are not in the record. The matter is just too vague for the court to find for Plaintiff. Therefore, Plaintiff does not have standing to sue for . . . the allegedly faulty plumbing.

Pelletier filed a timely notice of appeal from that judgment, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

3

No. 18-40390

But the story is not done. After filing the notice of appeal of the initial judgment, Pelletier filed a motion to amend judgment with the district court,[1] and included several additional exhibits which he alleged evidenced his personal ownership. The appellees opposed the motion, arguing that the new exhibits still did not clearly establish personal ownership and noting that many of the new exhibits were created after the evidentiary hearing, when Pelletier had a clear motive to manufacture standing. Prior to the district court's ruling on that motion, Pelletier filed an amended notice of appeal, wherein he expressed his desire to incorporate the motion to amend judgment into his appeal, even though he expressly noted that the motion "has not yet been ruled upon" by the district court. The district court denied the motion to amend judgment, specifically finding that all of the "new" evidence was either known to Pelletier before the hearing but not shared with the court or created by or on behalf of Pelletier after the evidentiary hearing. Pelletier did not file a notice of appeal from the order denying the motion to amend judgment any time after that order was issued.

II.

There are thus two issues before us. First, whether an appeal of the order denying the motion to amend judgment is properly before us; and second, whether the district court erred by dismissing the case for lack of standing. We address each issue in turn.

1.

We begin by addressing whether an appeal of the order denying the motion to amend judgment is properly before us.

---

[1] The motion was styled as "Plaintiff's Motion to Alter or Amend Judgment Per FRCP 59(e); Motion for Judgment as a Matter of Law Per FRCP 50(a)(2); and Motion for Relief from a Judgement Order Per FRCP 60." However, a Rule 50 motion is not applicable here, and the arguments for Rule 59(e) and Rule 60 relief appear to be indistinguishable from one another. Thus, for brevity's sake, we refer to it as a motion to amend judgment.

No. 18-40390

"[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). The Federal Rules of Appellate Procedure direct that the notice of appeal must be filed *after* the district court has decided the issue sought to be appealed. *See* Fed. R. App. P. 4(a)(1) (for civil cases); Fed. R. App. P. 4(b)(1) (for criminal cases).

In this case, Pelletier attempted to amend his notice of appeal to include his motion to amend judgment, but he filed that amended notice of appeal *before* the district court issued its order on that post-judgment motion. That is not a proper notice of appeal from the ruling on the post-judgment motion. As such, we lack the jurisdiction to review that decision, as well as any of the exhibits provided therein. *See Taylor v. Johnson*, 257 F.3d 470, 475 (5th Cir. 2001); *cf. Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017) (rejecting, in a criminal case, the argument that a notice of appeal filed after the initial judgment is rendered also "springs forward" to appeal an amended judgment).

2.

Therefore, the only question properly before us is whether the district court erred in its initial judgment dismissing the case for lack of standing.

We review *de novo* a district court's rulings on legal questions, including rulings on the issue of standing. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). However, "[a] district court's factual findings, including those on which the court based its legal conclusions, are reviewed for clear error." *Id.* (citation omitted). "A factual finding is not clearly erroneous if it is plausible, considering the record as a whole." *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014) (citation omitted).

Before addressing the standing arguments, we pause to address the type of standing that is at issue. "Standing jurisprudence contains two strands: Article III [or constitutional] standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies

judicially self-imposed limits on the exercise of federal jurisdiction." *Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012) (citation, alterations, and quotation marks omitted). A dismissal for lack of constitutional standing should be granted under Rule 12(b)(1) for lack of subject matter jurisdiction, whereas a dismissal for lack of prudential standing should be granted under Rule 12(b)(6) for failure to state a claim. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

Before the district court, and again before this court, the appellees argued that the courts lack subject matter jurisdiction because Pelletier lacks prudential standing. However, as explained above, a lack of prudential standing does not implicate subject matter jurisdiction, and the district court appears to have granted the Rule 12(b)(1) motion to dismiss based on constitutional standing.[2] We therefore start and end by addressing the constitutional standing determination made by the district court. *See id.* (noting that we must first establish that we have constitutional standing before addressing questions of prudential standing).

One requirement of constitutional standing is that the plaintiff must have suffered (or be imminently threatened with suffering) the alleged injury.[3]

---

[2] Pelletier's *pro se* briefs, for their part, do not clearly identify whether his arguments pertain to prudential or constitutional standing.

[3] The Supreme Court has noted that there is some overlap and tension between the constitutional standing requirement that a plaintiff must show he has suffered an injury and the prudential standing requirement that a plaintiff may not assert the legal rights of others. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014); *see also United States v. Windsor*, 570 U.S. 744, 781–88 (2013) (Scalia, J., dissenting). We have held that prudential standing requirements still apply to third-party challenges brought by plaintiffs who otherwise have constitutional standing. *See Superior MRI Servs.*, 778 F.3d at 506. *See also* 33 Charles A. Wright et al., Federal Practice & Procedure § 8343 (2d ed. April 2019 Update) (describing the tension, and noting that among all the categories of prudential standing, "only the doctrine of third-party standing . . . still remains in the prudential category").

No. 18-40390

*See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)). To satisfy that requirement here, Pelletier needed to establish that he, personally, was injured by the allegedly faulty plumbing installed at the hotel. The district court concluded that Pelletier did not make that showing, and Pelletier raises two arguments contending that the district court erred on that point.

First, Pelletier contends that a jury, not the court, should have resolved the factual dispute over whether he owned the hotel. "[W]here subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). However, where the same factual dispute underlies both the subject matter jurisdiction and the merits of the case, "the trial court must assume jurisdiction and proceed to the merits." *Id.* at 150.

Because Pelletier did not adequately raise this argument before the district court in any motion or proceeding that is properly before us, it is forfeited on appeal. *See United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 376 (5th Cir. 2017) ("[T]o preserve its argument for appeal, the litigant must press and not merely intimate the argument before the district court." (citation and quotation marks omitted)). [4]

Second, Pelletier contends that the district court erred in its determination that he did not personally own the hotel. To prevail on a factual dispute concerning standing, "a plaintiff must prove the existence of subject-

---

[4] However, even if we were to consider the argument, Pelletier's contention would be unavailing. The merits of the case are whether the appellees breached the contract or otherwise violated state law by installing allegedly faulty plumbing. That dispute is entirely distinct from the dispute over whether Pelletier owns the hotel. As such, it was proper for the district court to first determine whether it had subject matter jurisdiction by resolving the factual question of whether Pelletier owned the hotel.

matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Superior MRI Servs.*, 778 F.3d at 504 (citation and quotation marks omitted).

As such, Pelletier carried the burden of establishing, by a preponderance of the evidence, that he personally was the legal owner of the hotel. Under Texas law, "[t]he general rule is that improvements become part of the land and belong to the landowner unless there is . . . evidence showing intent of the improver that the improvements remain personalty with the right to be removed." *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 838 (Tex. App.—Austin 2004, no pet.).

Pelletier repeatedly argues—both before the district court and this court—that the land lease agreement (between himself and an LLC that he is associated with) is dispositive for determining that he, personally, was the legal owner of the hotel's physical structure.

His argument was unpersuasive to the district court and also is to us. The district court weighed that land lease agreement against documentary and testimonial evidence indicating that an LLC was instead the proper legal owner of the hotel. Significantly, that other evidence included multiple deeds of trust, signed after the land lease agreement, in which Pelletier, acting as an agent of the LLC, represented that the LLC was the owner of the property and "any improvements" thereon. Also of significance, the district court found it to be "troubling" that Pelletier, as the primary actor for the LLCs, previously allowed those entities to represent to a Texas court that they were the owners of the hotel in state court litigation that involved the same allegedly faulty

plumbing.[5]  As the district court observed, "[s]tatements to lenders and to courts are not taken lightly."

Pelletier argues that Texas state courts give substantial weight to land lease agreements when resolving the ownership of improvements made upon leased land.  *See, e.g.*, *Bexar Appraisal Dist. v. Dee Howard Co.*, No. 04-96-00085-CV, 1997 WL 30884 (Tex. App.—San Antonio Jan. 29, 1997, writ denied).  In a less convoluted case, his argument might have more traction.  However, based on the record before us, we cannot say that the district court clearly erred in its determination that Pelletier failed to establish by a preponderance of the evidence that he personally owned the hotel.

Therefore, because Pelletier did not establish that he personally owned the hotel and he offered no other valid cause of action for his personal claim against the appellees, the district court did not err in its initial judgment dismissing the case for lack of standing.  *Cf. L & F Homes & Dev., L.L.C. v. City of Gulfport,* 538 F. App'x 395, 408 (5th Cir. 2013) (unpublished) (holding that an individual member of an LLC did not have standing to sue a third party for economic harms allegedly suffered by the LLC because "[a] stockholder in a corporation does not have standing to bring suit in his own name for injuries sustained by the corporation . . . even where that individual is the sole

---

[5] That state litigation was brought by two LLCs associated with Pelletier and involved the same claims of allegedly faulty plumbing at issue in this appeal.  The complaint asserted that the LLCs "are the owners of the TexInn hotel."  Originally, those LLCs were represented by counsel.  However, counsel for the LLCs later withdrew and the LLCs were notified that, as LLCs, they were precluded from representing themselves *pro se*.  Shortly thereafter, Pelletier filed his *pro se* complaint in federal court claiming that he, personally, was the owner of the hotel.  The state court claims brought by the LLCs were subsequently dismissed for failure to prosecute.  However, the state court granted a default judgment in those proceedings on counterclaims that were brought against the LLCs, specifically determining that it had subject matter jurisdiction over the parties.  That determination implies that the state court understood the LLCs to have standing to sue and be sued as owners of the hotel for matters regarding the allegedly faulty plumbing that is at issue.

No. 18-40390

shareholder of a corporation." (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 276–77 (5th Cir. 1997)).

\*   \*   \*   \*

The district court's judgment is AFFIRMED.[6]

---

[6] The appellees' motion to take judicial notice of additional state court documents is denied.